**IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| FRITZ DAIRY FARM, LLC, ET AL. ) | Case No. 13-3379 |
| ) | |
|     Plaintiffs-Appellants    ) | |
| ) | |
| v.    ) | |
| ) | |
| CHESAPEAKE EXPLORATION,  ) | On appeal from the U.S. District |
| LLC, ET AL.    ) | Court, Northern District of Ohio |
|     Defendants-Appellees.    ) | Case No.: 5:12-CV-1736 |

---

**BRIEF OF APPELLANTS**

---

WARNER MENDENHALL, 0070165  
ALYSSA ALLEN, 008271  
THE LAW OFFICES OF  
WARNER MENDENHALL, INC.  
190 N. Union St., Ste. 201  
Akron, OH  44304  
330-535-9160; 330-762-9743 fax  

JOHN KELLER, 0019957  
TIM MCGRANOR, 0072365  
VORYS, SATER, SEYMOR &  
PEASE, LLP  
52 E. Gay St., POB 1008  
Columbus, OH  43216-1008  
614-464-6389  

ATTORNEYS for PLAINTIFFS-  
APPELLANTS  

ATTORNEYS for  
DEFENDANTS-APPELLEES

Case No. 13-3379

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FRITZ DAIRY FARM, LLC, ET AL.

Plaintiffs-Appellants,

v.

CHESAPEAKE EXPLORATION, LLC, ET AL.

Defendants-Appellees

---

## DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST

Pursuant to 6th Cir. R. 26.1, **FRITZ DAIRY FARM, LLC** makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?

    **No.**

2.  Is there a publicly owned corporation, not a party to this appeal, that has a financial interest in the outcome?

    **No.**

/s/Warner Mendenhall                    November 14, 2013
Warner Mendenhall, Esq.

i

# **TABLE OF CONTENTS**

Disclosure of Corporate Affiliations and
    Financial Interest ................................................................... i.

Table of Contents ......................................................... ii.

Table of Authorities ......................................................... iii.

Statement in Support of Oral Argument ......................................... 1.

Jurisdictional Statement ................................................... 2.

Statement of the Issues ................................................... 3.

Statement of the Case ................................................... 4.

Statement of the Facts ................................................... 5.

Summary of the Argument ......................................... 10.

Argument ........................................................... 11.

Conclusion ........................................................... 22.

Certificate of Compliance With FRAP 32(A)(7) ......................................... 23.

Certificate of Service ......................................................... 24.

Designation of Relevant Documents ......................................... 25.

# **TABLE OF AUTHORITIES**

*Cases*

*Adkins v. Estate of Place*, 180 Ohio App. 3d 747, 749 (Ohio Ct. App., Clark County 2009). .................................................................. 17, 18, 20.

*Amos v. Commissioner,* T.C.Memo. Docket No. 13391-01, 2003-329, December 1, 2003). ...................................................................... 18.

*Argo Plastics Prods. Co. v. City of Cleveland*, 15 Ohio St.3d 389, (1984)…18.

*Barth v. Barth*, 113 Ohio St.3d 27, 29-30, (Ohio 2007) ............................... 13.

*Broz v. Yano*, 62 Ohio Misc.2d 535 (Ohio C. Pleas 1992) ......................... 17.

*Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012) ........... 11.

*Caterpillar v. Lewis*, 519 U.S. 61, (1996) ......................................................12.

*Chirchiglia v. Ohio Bur. of Workers' Comp.*, 138 Ohio App.3d 676, 679, (Ohio App. 2000) ........................................................................... 15.

*Continental W. Condominium Unit Owners Assoc. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502, (Ohio 1996) ................................................... 15.

*East Cleveland v. Landingham*, 97 Ohio App.3d 385, 392, (Ohio App. 1994)

.............................................................................................. 13.

*Erie Railroad Co. v. Thompkins*, 304 U.S. 64, (1938)………………………15.

*Garrison v. Daytonian Hotel*, 105 Ohio App.3d 322, 325, (Ohio App. 1995)
.............................................................................................. 16.
*Henley v. Cuyahoga Cty. Bd. of Mental Retardation and Developmental Disabilities*, 141 Fed.Appx. 437, 442 (6th Cir. 2005) ................................... 16.

iii

*Hinton v. Trinity Highway Products,* (N.D. Ohio, 2012), Case No. 4:12-cv-1063). ............................................................................................. 18.

*Klever v. City of Stow,* 13 Ohio App.3d 1, 5, (Ohio App. 1993)................... 15.

*Master Consol. Corp. v. BancOhio Nat'l Bank*, 60 Ohio St.3d 570, 576-577, (1991) ............................................................................................. 17.

*Morr v. Crouch*, 19 Ohio St.2d 24, 29, (Ohio 1969) .............................. 18, 20.

*Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828, (1989) ........... 13.

*Nilavar v. Osborn*, 711 N.E.2d 726, 732 (Ohio App. 1998) ........................ 15.

*Prouse, Dash & Crouch, L.L.P. v. DiMarco*, 116 Ohio St.3d 167, 169, (Ohio 2007) ............................................................................................. 13.

*Richard A. Berjian, D.O., Inc. v. Ohio Bell Tel. Co.*, 54 Ohio St.2d 147, (Ohio 1978). ............................................................................................. 16.

*Rulli v. Fan Co.*, 79 Ohio St.3d 374, syllabus, 377, (Ohio 1997)…………...16.

*Saylor v. Wilde*, unreported, No. 2006-P-0114, 2007-Ohio-4631, (Ohio App., Sept. 7, 2007) ............................................................................................. 18.

*Sims-Madison v. Inland Paperboard and Packaging, Inc.*, 379 F.3d 445 (7th Cir. 2004) ............................................................................................. 15.

*Snelling v. Gardner*, 69 Ohio App.3d 196, 201, (Ohio App. 1990) … 12, 13, 14.

*Spercel v. Sterling Indus., Inc.,* 31 Ohio Stp.3d 36, 39, (1972) ................... 16.

*State ex rel. Duncan v. Portage Cty. Bd. of Elections*, 115 Ohio St.3d 405, 407, (Ohio 2007) ............................................................................................. 13.

*Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 419 (6th Cir. 2000)
............................................................................................. 15.

***Statutes***

28 U.S.C. § 1291 ................................................................... 2.

28 U.S.C. § 1332 ................................................................... 2.

28 U.S.C. § 1441 ................................................................... 2.

Ohio Rev. Code Chapter 147 ............................................. 12, 13.

## <u>STATEMENT IN SUPPORT OF ORAL ARGUMENT</u>

Plaintiff-Appellant Fritz Dairy Farms, LLC respectfully requests oral argument because resolution of this case relies upon specific facts.  The panel may have fact questions for counsel.

## <u>JURISDICTIONAL STATEMENT</u>

Title 28, United States Code, section 1291 grants jurisdiction to this court to hear appeals from final decisions by the district courts.  This case began in an Ohio court.  The Appellees removed it to the United States District Court for the Northern District of Ohio pursuant to 28 U.S.C. § 1441, on the claimed diversity grounds pursuant to 28 U.S.C. § 1332.  The Order appealed from was entered on the District Court's docket on March 1, 2013.  This appeal was filed on March 22, 2013.  The Order disposed of all parties claims by enforcing a contested Settlement Agreement.  R 26. This appeal is brought under 28 U.S.C. § 1291.

## <u>STATEMENT OF THE ISSUES</u>

I.      The trial court erroneously determined that it possessed diversity jurisdiction over this case.  Doc # 26, Memorandum Opinion and Order.

II.      The trial court abused its discretion when it determined that an enforceable settlement agreement existed between the parties in this case. Doc. # 26, Memorandum Opinion and Order.

## STATEMENT OF THE CASE

Appellants filed this action June 4, 2012 in the Carroll County Court of Common Pleas.  Their Complaint alleged that Kenyon Energy, LLC and/or its agents substituted pages of two oil and gas leases to fraudulently extend its term for an additional 5 years.  On July 6, 2012, Appellees removed the case to Federal District Court based on claimed diversity jurisdiction.  After limited discovery, the parties entered into settlement negotiations at a December 17, 2012 pretrial.

During the negotiations, the Court released the Fritzes to take care of their farm with the caveat that they be available by phone.  In their absence, a potential settlement including terms never discussed or approved by the Fritzes was stated on the record.  The next day, Judge Adams dismissed the case giving the parties 30 days to draft the settlement and submit a final entry.

The parties failed to finalize settlement documents.  On January 15, 2013, Defendants filed a Motion to Enforce the Settlement Agreement.  The Fritzes opposed that Motion and a hearing was held on February 13, 2013.  On March 1, 2013, the District Court granted Defendants' Motion to enforce the settlement agreement.   The Fritzes appealed that Order.

## STATEMENT OF THE FACTS

Appellants Mark and Michelle Fritz are dairy farmers from Minerva, Ohio. They formed Fritz Dairy Farms, LLC. In 2010, the Fritzes negotiated a gas and oil lease agreement with Richard Owen from Kenyon Energy, LLC.

Owen, a member of Kenyon Energy, LLC, an Ohio Limited Liability Company, affirmed he was an Ohio resident when he applied for and received his notary commission from the State of Ohio. In that application, he listed his address as 5280 Broadmoor Circle, #218, North Canton, Ohio. Fritz Letter to Court, Doc 27, PageID #: 288. He was commissioned as an Ohio Notary on September 21, 2010 and resigned his commission on October 1, 2012. *Id*, PageID #: 287-288.

The Kenyon leases were assigned to Chesapeake Energy, LLC a foreign limited liability company organized under the laws of Oklahoma and qualified to do business in the State of Ohio. The leases involve 130 acres in Augusta and Washington Townships in Carroll County, Ohio. There are two leases: (1) Fritz Dairy Farms LLC, Lessor to Kenyon Energy LLC, Lessee, for 102.82 acres (Doc #1, Ex. A, Complaint, PageID #19); and (2) Mark R. Fritz and Michele E. Fritz, Lessors to Kenyon Energy, LLC. Lessee for about 27.3965 acres. *Id*, Page ID# 26.

5

The original signed leases provided for a five year term with no right of extension.  However, after the leases were notarized and delivered to Richard Owen, several pages in the original leases were substituted to add a five year extension to the recorded versions that the Fritzes had rejected. *Id*, PageID #s 20, 28.

The substituted lease pages triggered this lawsuit and, eventually, settlement negotiations on December 17, 2012.  The negotiations led to apparent agreement on several terms which the parties intended to reduce to writing.  However, no written agreement was finalized due to the Fritzes objection to a term they never agreed to-a confidentiality clause.  The Fritzes also did not agree to the lease term or to the terms of assignment and ratification documents which changed the acreage under lease.

**The confidentiality provision**

Ms. Fritz wanted to talk about her experiences with her community.  As Ms. Fritz testified on direct:

Q. Let me ask you another thing about the confidentiality.

Why is that important to you, the existence or nonexistence

of a confidentiality clause?

A. Because if this is happening to us, I want to be able

6

to speak as to what is the truth as to what is happening in

our area.  By people signing this confidentiality provision

and being more or less stuck in situations and they can't

discuss it ever again… .  Tr. of Motion Hrg, Doc. 38, PageID #: 542.

Ms. Fritz testified that during the settlement negotiation "we were not even

told about the confidentiality provision."  *Id*,  PageID #: 541.

On cross examination Ms. Fritz reiterated:  "We never agreed to a

confidentiality provision, which was never brought up…"  *Id*, PageID #: 545-

546.

Attorney Leiby confirmed that he did not discuss the confidentiality

term with his clients:

Q. Thank you. And were you authorized by your clients to

enter into that settlement on that day?

A. I omitted one thing.

Q. Okay.

A. The confidentiality provision, which the court inquired

about and which we each [the attorneys] agreed to.  *Id*,  PageID #: 550.

On cross examination Attorney Leiby elaborated further:

Q. Mr. Leiby, in that E-mail, you state in the first

sentence, "One of the items I failed to mention," would you

explain that to the court, please?

A. Yes. I failed to mention the confidentiality

provision.

Q. So that **term was not discussed** with the clients?

A. Correct.  *Id*,  PageID #: 554.

Attorney McCranor representing Chesapeake admitted confidentiality

was not discussed:

MR. MCGRANOR: The confidentiality provision, Your

Honor, was first raised by Your Honor at the settlement

conference. It is something that we didn't specifically

discuss during our negotiations, but it is something that we

would like to have in the settlement agreement as we stated

on the record.  *Id*,  PageID #: 558

**Other changes to the settlement terms**

The Fritzes did not agree to an extension of the primary lease term of 5

years to a primary lease term of 7.5 years.   They thought they agreed to a

primary lease term of 5 years and the extension shortened to 2.5 years.  *Id,*

PageID #: 552.  The record shows that Leiby referred to the "entire term" of

the lease as being 7.5 years.  Transcript of Pretrial, Doc. # 37*,* PageID #: 509.

Leiby later interpreted this as one 7.5 year term which eliminated a payment of $97,000 to the Fritzes.

> Q. Okay. Did you also fail to mention that [the Fritzes] were waiving the payment on the extension of almost $97,000?
>
> A. No, the stipulated payment was a substitute for the payment provided for in the extension term.
>
> Q. So you substituted $10,000 for $97,000?
>
> A. Whatever the amount was. Tr. of Motion Hrg, Doc. 38, PageID #: 554.

A single lease term of 7.5 years and exchange of a $97,000 payment for $10,000 was not discussed with the Fritzes. *Id*, PageID #: 542.

An Amendment and Ratification of Oil and Gas Lease was also sought by the Appellees. Motion to Enforce, Doc. #20, Ex. 1, PageID #: 163 and 186-200. The Amendment and Ratification documents covered 170 acres—almost 40 acres more than in the original lease. *Id.* PageID #: 186-200. When the Fritzes refused to sign these documents, Chesapeake filed its Motion to Enforce the Settlement Agreement. *Id*. PageID #: 176.

## <u>SUMMARY OF THE ARGUMENT</u>

Richard Owen, a member of Kenyon Energy, LLC, was an Ohio resident at the time of the filing of the Complaint. The basis for removal from state court was a false claim of diversity jurisdiction. The case should have been remanded to state court for lack of jurisdiction.

The Settlement Agreement was not final because the Fritzes did not agree to its terms. The Fritzes were not consulted about the confidentiality clause and there was no consideration for that clause. Additionally, emails between the attorneys demonstrate other terms to the settlement that were not agreed to by the Fritzes such as the Amendment Ratifications.

## ARGUMENT

**I.    The trial court erroneously determined that it possessed diversity jurisdiction over this case.  R 26, Memorandum Opinion and Order.**

Chesapeake removed this case from Ohio's Carroll County Court of Common Pleas to the District Court for the Northern District of Ohio on the grounds that, it claimed, there was diversity of citizenship among the parties and more than $75,000 in controversy, sufficient to satisfy 28 U.S.C. § 1332.

There was not.

There is no dispute that the amount in controversy exceeded $75,000. But the District court erred when it found that Owen was not an Ohio resident "when Defendants removed this matter."  Order on Motion to Enforce, Doc. #26, PageID #: 236.

**A.    Standard of review**

Challenges to subject-matter jurisdiction come in two varieties: facial challenges, and factual challenges.  See *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012).  Under a facial attack, where the allegations in the complaint are taken as true, the court on appeal reviews the trial court's findings *de novo.  Id.*  Under a factual attack where the trial court weighs evidence to confirm the existence of subject-matter jurisdiction, the appellate court reviews the decision for clear error.  *Id.*

11

**B.     Diversity jurisdiction and citizenship**

In order for a District court to have diversity jurisdiction over a case, there must be complete diversity of citizenship between the plaintiffs and the defendants; in other words, none of the defendants must be citizens of any of the states where a plaintiff has citizenship.  See, e.g, *Caterpillar v. Lewis*, 519 U.S. 61 (1996).

For diversity purposes, "citizenship" means "domicile," so a person is a citizen of the state where that person has his or her domicile.  See, e.g., *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828, (1989). "Domicile" doesn't automatically refer to the place where a person has a residence but residence is an element of "domicile."  See *Heinen v. Nortrom Grumman Corp.*, 671 F.3d 669, 670 (7th Cir. 2012). Ohio has defined "domicile" as "a legal relationship between a person and a particular place which contemplates two factors: first, residence, at least for some period of time and, second, the intent to reside in that place permanently or at least indefinitely." *Snelling v. Gardner*, 69 Ohio App.3d 196, 201, (Ohio App. 1990).

**C.     Ohio's notary statutes and residence**

Except for attorneys who are licensed in Ohio and have their principal place of business in Ohio, Ohio Rev. Code § 147.01 does not allow a person

who isn't a legal Ohio resident to hold a notary commission.  See Ohio Rev.
Code § 147.01(B).

Neither the statute nor Chap. 147 of the Code defines "legal resident,"
but when Ohio's courts determine whether a person is a legal resident of
Ohio, they examine the person's actions to determine whether they have
established a home in Ohio where they intend to stay permanently.  See, e.g.,
*Barth v. Barth*, 113 Ohio St.3d 27, 29-30, (Ohio 2007) (wife established
California residence by turning on utilities, taking library card, enrolling
children, changing addresses, and subscribing to local newspaper in
California, precluding her from filing divorce in Ohio); *Prouse, Dash &
Crouch, L.L.P. v. DiMarco*, 116 Ohio St.3d 167, 169, (Ohio 2007) (living in
Ontario on visitor's visa to avoid prosecution in Ohio did not terminate Ohio
residency); *State ex rel. Duncan v. Portage Cty. Bd. of Elections*, 115 Ohio
St.3d 405, 407, (Ohio 2007) (driver's license, car registration, mailing address
for property tax bills established city council candidate's legal residence);
*East Cleveland v. Landingham*, 97 Ohio App.3d 385, 392, (Ohio App. 1994)
(voting establishes residency).

In *Snelling*, the Court reiterated that a person may have more than one
legal residence, and found that a putative father was a legal resident of both
Ohio and Tennessee for child support purposes, when he lived in Columbus

13

for weeks at a time, used his sister's address in Columbus for mail delivery, applied for employment in Columbus, received Tennessee unemployment benefits in Columbus, and managed to father a child in Columbus. See *Snelling*, 69 Ohio App.3d at 202. The Court did not find he was domiciled in Ohio, but found that Ohio had jurisdiction over him. *Id*.

**D.    Application**

By becoming a notary, Owen represented to Ohio that he was a "legal resident" of the State at the time the lawsuit was filed. Fritz Letter to the Court, Doc. # 27, PageID #: 287-288. He therefore established a legal relationship with the State of Ohio sufficient to establish citizenship in Ohio that negated the District Court's jurisdiction over this case.

**II.    The trial court abused its discretion when it determined that an enforceable settlement agreement existed between the parties in this case. R 26, Memorandum Opinion and Order.**

**A.    Ohio law applies**

Under the *Erie* Doctrine, this Court (like the District Court) must apply Ohio law to determine whether a valid, enforceable settlement agreement existed between the parties. See, e.g., *Sims-Madison v. Inland Paperboard and Packaging, Inc.*, 379 F.3d 445 (7th Cir. 2004); *Erie Railroad Co. v. Thompkins*, 304 U.S. 64, (1938).

14

**B.    Standard of Review**

Under Ohio and Federal law, an appellate court reviews trial court's decision to enforce a settlement agreement for an abuse of discretion, and will not reverse the decision where there is competent, credible evidence to support the trial court's findings. See, e.g., *Klever v. City of Stow,* 13 Ohio App.3d 1, 5, (Ohio App. 1993); *Chirchiglia v. Ohio Bur. of Workers' Comp.*, 138 Ohio App.3d 676, 679, (Ohio App. 2000).  Put another way, an appellate court reviews a trial court's findings of fact to determine whether they are clearly erroneous, and the trial court's decision based on those facts for an abuse of discretion.  See *Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 419 (6th Cir. 2000).

**C.    Contract law**

Ohio treats agreements to settle litigation as contracts.  See, e.g., *Continental W. Condominium Unit Owners Assoc. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502, (Ohio 1996). Under Ohio law, a contract exists if there is mutual assent, generally through an offer and acceptance, plus consideration.  See, e.g., *Nilavar v. Osborn*, 711 N.E.2d 726, 732 (Ohio App. 1998).  When parties intend that their agreement will be reduced to writing (such as in a written settlement agreement) and signed, no enforceable

15

contract exists until that written agreement is executed.  See, e.g., *Richard A. Berjian, D.O., Inc. v. Ohio Bell Tel. Co.*, 54 Ohio St.2d 147, (Ohio 1978).

Just as with other contracts, a counteroffer to a settlement offer operates as a rejection of that offer; it ceases to exist.  See *Garrison v. Daytonian Hotel*, 105 Ohio App.3d 322, 325, (Ohio App. 1995).

When parties — not attorneys — enter into an oral settlement agreement in open court, that agreement becomes an enforceable contract that the parties cannot repudiate, but that the parties may move the court to set aside.  See *Spercel v. Sterling Indus., Inc.,* 31 Ohio St.3d 36, 39, (Ohio 1972).

When the meaning of a settlement agreement's terms is disputed, or the existence of the agreement itself is disputed, Ohio's standard procedure is for the trial court to conduct an evidentiary hearing before entering judgment. See *Rulli v. Fan Co.*, 79 Ohio St.3d 374, syllabus, 377, (Ohio 1997).  Because settlement agreements terminate litigation, trial courts are to take careful pains to ensure that the terms of such an agreement are clear, and that the parties actually agreed to them.  See *Rulli*, 79 Ohio St.3d at 376.

To enforce a settlement, a District Court "must conclude that agreement has been reached on *all* material terms."  *Henley v. Cuyahoga Cty. Bd. of Mental Retardation and Developmental Disabilities*, 141 Fed.Appx. 437, 442 (6th Cir. 2005), emphasis added.  When a settlement lacks agreement or

16

consensus on an essential term, Ohio deems the settlement incomplete and unenforceable.  See *Broz v. Yano*, 62 Ohio Misc.2d 535 (Ohio C. Pleas 1992).

**D.      Agency and authority in Ohio**

In this case, the question comes down to whether Leiby had authority to speak for the Fritzes as to how long the principal term of the lease would be, and whether they would keep the terms of any settlement confidential.

In Ohio, an attorney does not have authority to settle that matter on behalf of the client without the express consent of his or her client.  *Adkins v. Estate of Place*, 180 Ohio App. 3d 747, 749 (Ohio Ct. App., Clark County 2009).  The attorney agent cannot clothe himself with apparent authority by his own acts; instead, it is the principal's acts and conduct that clothe the agent with the appearance of authority.  *Id*.

In order for the principal to be bound by the agent's acts, there must exist "affirmative" evidence showing 1) that the principal held the agent out to the public as possessing sufficient authority to "embrace the particular act in question;" and 2) that the person dealing with the agent knew of the facts, acted in good faith, and reasonably believed that the agent possessed the necessary authority.  See *Master Consol. Corp. v. BancOhio Nat'l Bank*, 60 Ohio St.3d 570, 576-577, (1991).

17

Even if an agent lacks specific authority to perform an act for the principal (such as to settle litigation), the principal can ratify the agent's action by accepting the benefit of the agent's actions — but inaction by the principal is not enough to show he or she ratified the agent's acts.  See *Morr v. Crouch*, 19 Ohio St.2d 24, 29, (Ohio 1969); *Saylor v. Wilde*, unreported, No. 2006-P-0114, 2007-Ohio-4631, (Ohio App., Sept. 7, 2007).

While a lawyer can bind a client, for the purposes of a motion to enforce a settlement (as opposed to a motion for relief from judgment under Ohio R.Civ.P. 60(B), see *Argo Plastics Prods. Co. v. City of Cleveland*, 15 Ohio St.3d 389, (1984)), the client's act of hiring a lawyer, in and of itself, is not sufficient under Ohio law to imbue the lawyer with apparent authority to settle a case on behalf of his or her client.  See *Adkins*, 180 Ohio App.3d at 752; *Morr*, 19 Ohio St.2d at 27 (attorney without specific authorization not empowered to settle client's claim, even when client is attorney's spouse).

Only when the parties are aware of the terms of a settlement offer and agree to it may a court enforce a settlement; it is not allowed to force a settlement or hold the parties to an unenforceable settlement.  See *Klever,* 13 Ohio App.3d at 4.

**E.    Application**

The Fritzes never ratified the purported settlement in this case, either by accepting any money from Chesapeake, or by signing the settlement agreement.  Instead, they provided evidence in the record (in the form of Mrs. Fritzes testimony and the Fritzes' filing in the District Court) that their previous counsel failed to communicate the change to the length of the lease's principal term, and never asked them their view about whether the settlement would be confidential.  Tr. of Motion Hrg, Doc 38, PageID #: 537 and 555.

The length of the principal term of a gas lease is a material term of a settlement agreement, given that the payments that Chesapeake would have to make to the Fritzes under the lease depended greatly upon the length of the principal term.

Confidentiality was a material term of the purported settlement to which no consideration was provided.  The Fritzes not only objected to it but had a materially false impression of its scope (they believed it prohibited them from discussing any detail of their fraud case, rather than just the settlement payment), but that Chesapeake's counsel demanded that the District Court seal the transcripts in order to keep the settlement details confidential.  *Id.*, PageID #: 541-543.

19

The Court's Order stated that Leiby "… represented that he had full authority to settle the matter on behalf of his clients. Whether a specific term was relayed to the Fritzes before or after the Court put the terms on the record is immaterial to whether Attorney Leiby had the authority he represented to the Court." Order, Doc. #26, PageID #: 238. This is contrary to Ohio law. An attorney agent cannot clothe himself with apparent authority by his own acts. *Adkins*, 180 Ohio App. 3d 747, 749 (Ohio Ct. App., Clark County 2009).

Confidentiality provisions have routinely been determined to have a monetary value, especially for the purposes of tax consequences. No consideration was given for the confidentiality clause. The U.S. Tax Court has made it clear that a confidentiality clause must be supported by sufficient and clearly stated consideration or the Internal Revenue Service can assign any "just or fair amount" as the amount of consideration. *See, Amos v. Commissioner,* T.C.Memo. Docket No. 13391-01, 2003-329, December 1, 2003.

The Plaintiffs were never afforded the ability to negotiate the consideration for a confidentiality clause had they wanted to consider one.

Finally, the record indicates that it was at the Court's suggestion that a confidentiality clause be included. The Fritzes were not present, but remained available via telephone, although there was no attempt to contact them.

20

However, Defendant-Appellee, was present, via corporate representatives. The record indicates their consent to include a confidentiality clause.  Rather than recognizing this as a counter-offer to the proposed settlement agreement, Plaintiff's former counsel accepted the new agreement.

It is well-established that it is the clients' right to accept an offer to settle, not the lawyer's.  See *Morr v. Crouch,* (1969), 19 Ohio St.2d 24.  In *Hinton v. Trinity Highway Products,* the Northern District of Ohio court refused to enforce a settlement agreement where the attorney did not have *express* authority to settle his clients' claims.  (N.D. Ohio, 2012), Case No. 4:12-cv-1063.   It was beyond Lieby's authority to consent to a counter-offer never presented to the Fritzes on December 17, 2013.

21

## CONCLUSION

The District Court lacked jurisdiction, which nullifies its decision to enforce the purported settlement agreement. The District Court abused its discretion when it found valid and enforceable settlement agreement between the parties because key terms was never discussed with the Fritzes. The attorney's apparent authority cannot bind the Fritzes to terms they did not discuss and objected to. On these grounds, the Fritzes respectfully ask this Court to REVERSE and REMAND this case to the District Court for trial.

Respectfully submitted,

/s/Warner Mendenhall
WARNER MENDENHALL, 0070165
ALYSSA ALLEN, 0082715
THE LAW OFFICES OF WARNER
MENDENHALL, INC.
190 North Union Street, Suite 201
Akron, OH  44304
(330) 535-9160; fax (330) 762-9743
warnermendenhall@gmail.com
ATTORNEYS FOR APPELLANTS

## **<u>CERTIFICATE OF COMPLIANCE WITH FRAP 32(A)(7)</u>**

I hereby certify that the foregoing Proof Brief of Appellant complies with the type volume limitations of FRAP 32(A)(7), as it contains 3508 words.

<u>/s/Warner Mendenhall</u>
One of the Attorneys for
Appellants

23

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that of the foregoing Brief of Appellant was served via the Court's ECF , on this 14th day of November, 2013.

<u>/s/ Warner Mendenhall</u>
One of the Attorneys for Appellants

## **Designation of Relevant District Court Documents**

Doc. #1, Ex. A, Complaint, PageID #: 7-49
Doc. #20, Motion to Enforce, PageID #: 152-218
Doc. #26, Order on Motion to Enforce, Page ID #: 236-238
Doc. #27, Fritz Letter to Court, PageID #: 239-420
Doc. #37, Transcript of Pretrial, PageID #: 471-514
Doc. #38, Tr. of Motion Hrg, PageID #: 515-564