Case No. 13-3379

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FRITZ DAIRY FARM, LLC, ET AL.,
Plaintiffs-Appellants,

v.

CHESAPEAKE EXPLORATION, L.L.C., ET AL.,
Defendants-Appellees

On Appeal from the United States District Court
for the Northern District of Ohio
in District Court Case No. 5:12-CV-1736

BRIEF OF APPELLEES CHESAPEAKE EXPLORATION, L.L.C.,
RICHARD OWEN, AND KENYON ENERGY, LLC

John K. Keller (0019957)
Timothy B. McGranor (0072365)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, Ohio 43215
Telephone: (614) 464-6400
Facsimile: (614) 719-954
Email:  jkkeller@vorys.com
          tbmcgranor@vorys.com

*Attorneys for Defendants-Appellees Chesapeake
Exploration, L.L.C., Richard Owen, and Kenyon
Energy, LLC.*

## CORPORATE DISCLOSURE STATEMENT

Chesapeake Exploration, L.L.C., is an Oklahoma limited liability company. Chesapeake Exploration, L.L.C., has three members: (1) Chesapeake Operating, Inc., a wholly owned subsidiary of Chesapeake Energy Corporation, a publicly traded company; (2) Chesapeake E&P Holding Corporation, a wholly owned subsidiary of Chesapeake Energy Corporation, a publicly traded company; and (3) Chesapeake Appalachia, L.L.C., whose sole member is Chesapeake Energy Corporation, a publicly traded company. There is not a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome in this appeal.

Kenyon Energy LLC is not a subsidiary of a publicly owned corporation. There is not a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome of this appeal.


/s/ Timothy B. McGranor                                    December 17, 2013.
Timothy B. McGranor

# TABLE OF CONTENTS

Corporate Disclosure Statement ..........................................................................ii

Table of Authorities.......................................................................................v

Statement Against Oral Argument .....................................................1

Jurisdictional Statement ...................................................................1

Statement of the Issues....................................................................2

Statement of the Case......................................................................2

Statement of Facts ..........................................................................4

Summary of the Argument...............................................................10

Argument........................................................................................12

    I.    The District Court Correctly Concluded That Richard
        Owen Was a Citizen of Oklahoma, Not Ohio.  Thus, the
        District Court Had Subject Matter Jurisdiction Over
        This Case. ....................................................................12

    II.    The District Court Properly Determined That the Parties
        Entered Into a Valid and Enforceable Settlement
        Agreement.....................................................................16

        A.    Attorney Leiby had authority to settle this case on
            the Fritzes' behalf. ............................................17

        B.    After an authorized attorney settles the case, a
            party may not object to or revoke the terms of that
            settlement.........................................................21

        C.    Confidentiality Was Not an Essential Term of the
            Settlement Agreement. ......................................23

        D.    The Fritzes' Buyers' Remorse Is Insufficient
            Grounds to Nullify a Valid, Enforceable
            Settlement.........................................................25

Conclusion .....................................................................................26

Certification of Compliance with Word Limit ..................................................... 28

Certificate of Service ........................................................................................... 28

Designation of Relevant District Court Documents ............................................ 29

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Bessemer City*, 470 U.S. 564, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985) ....................................................................................................20

*Argo Plastic Prods. Co. v. City of Cleveland*, 474 N.E.2d 328 (Ohio 1984)...........21

*Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150 (6th Cir. 1992) .................16

*Brinkr, Inc. v. United Riggers, Inc.*, No. 1999CA00179, 2000 Ohio App. LEXIS 678 (Ohio Ct. App. Feb. 22, 2000) ...........................................18

*Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir. 2012) ...........................12

*Damon's Mo., Inc. v. Davis*, 590 N.E.2d 254 (Ohio 1992)......................................17

*Huey v. Stine*, 230 F.3d 226 (6th Cir. 2000) ............................................................16

*Kaiser v. Loomis*, 391 F.2d 1007 (6th Cir. 1968)....................................... 13, 14, 15

*King v. Zamiara*, 680 F.3d 686 (6th Cir. 2012)......................................................12

*Lepole v. Long John Silver's*, No. 2003-P-0020, 2003-Ohio-7198 (Ohio Ct. App. Dec. 31, 2003) ..............................................................................22

*Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 109 S. Ct. 1597 104 L. Ed. 2d 29 (1989) .............................................................13

*Mollis v. Rox Constr. Co.*, No. 92-T-4688, 1992 Ohio App. LEXIS 6083 (Ohio Ct. App. Dec. 4, 1992) ..............................................................22

*Mr. Mark Corp. v. Rush, Inc.*, 464 N.E.2d 586 (Ohio Ct. App. 1983)....................23

*Murray v. Murray*, No. L-09-1305, 2011-Ohio-1546 (Ohio Ct. App. Mar. 31, 2011)...............................................................................................26

*Novel v. Zapor*, No. 2:12-cv-737, 2013 U.S. Dist. LEXIS 39473 (S.D. Ohio Mar. 21, 2013) .............................................................................14

*Perko v. Perko*, No. 2001-G-2403, et al., 2003-Ohio-1877 (Ohio Ct. App. Apr. 11, 2003)...........................................................................26

*Persinger v. Extendicare Health Servs.*, 539 F. Supp. 2d 995 (S.D. Ohio 2008).............................................................................................................13

*PNC Mortg. v. Guenther*, No. 25385, 2013-Ohio-3044 (Ohio Ct. App. July 12, 2013) .........................................................................................................18

*Promotional Prods. Group, Inc. v. Sunset Golf, LLC*, No. 2009-P-0041, 2010-Ohio-3806 (Ohio Ct. App. Aug. 13, 2010) .....................................20

*RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633 (6th Cir. 2001).....................16

*Roehm v. Wal-Mart Stores, Inc.*, No. 07-10168, 2007 U.S. Dist. LEXIS 40773 (E.D. Mich. June 4, 2007) ............................................................14

*Rubel v. Lowe's Home Ctrs., Inc.*, 597 F. Supp. 2d 742 (N.D. Ohio 2009) ...... 17, 21

*Ruffian, LLC v. Hayes*, No. 09AP-948, 2011-Ohio-831 (Ohio Ct. App. Feb. 24, 2011).......................................................................................................23

*Sands v. Wagner & Hunt, P.A.*, No. 09-60557, 2009 U.S. Dist. LEXIS 77169 (S.D. Fla. Aug. 28, 2009) ...........................................................24

*Schalmo Builders, Inc. v. Zama*, No. 90782, 2008-Ohio-5879 (Ohio Ct. App. Nov. 13, 2008)..............................................................................................18

*Sheng v. Starkey Laboratories, Inc.*, 117 F.3d 1081 (8th Cir. 1997).........................23

*Snelling v. Gardner*, 590 N.E.2d 330 (Ohio Ct. App. 1990)....................................15

*Spercel v. Sterling Indus., Inc.*, 285 N.E.2d 324 (Ohio 1972) .................................17

*State ex rel. Duncan v. Portage Cty. Bd. of Elections*, 875 N.E.2d 578 (Ohio 2007)...........................................................................................................15

*Von Dunser v. Aronoff*, 915 F.2d 1071 (6th Cir. 1990)..............................................13

**STATUTES**

28 U.S.C. § 1291 .......................................................................................................1

28 U.S.C. § 1332........................................................................................... 2, 13, 15

28 U.S.C. § 1441 .......................................................................................................1

## STATEMENT AGAINST ORAL ARGUMENT

Appellees, Chesapeake Exploration, L.L.C., Richard Owen, and Kenyon Energy, LLC (collectively "Chesapeake") submit that oral argument is unnecessary given the nature of the parties' dispute. The law is clear. The trial court had jurisdiction over the dispute before it, and Plaintiffs-Appellants are bound by their agreement. The District Court's decision should be affirmed without further proceedings.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal under 28 U.S.C. § 1291. The District Court's Order dated March 1, 2013, disposed of the claims of all parties and constituted a final order. The notice of appeal was timely filed.

The District Court had jurisdiction over this action on diversity grounds, because complete diversity existed and the subject matter of the action exceeded $75,000. This matter was removed from the state court to the District Court under 28 U.S.C. § 1441.

## STATEMENT OF THE ISSUES

Did the District Court properly determine that it had jurisdiction over this action pursuant to 28 U.S.C. § 1332 when the evidence demonstrated that Richard Owen was a citizen of Oklahoma for diversity purposes when he declared that he was a permanent resident of Oklahoma and had only been temporarily staying in a Ohio hotel while engaging in temporary business in Ohio?

Did the District Court properly determine that a valid and enforceable settlement agreement existed when the Fritzes vested their attorney with expressly conferred actual authority and apparent authority to settle their case after the Fritzes had participated in a day of court-required settlement negotiations and had left their attorney to conclude the settlement?

## STATEMENT OF THE CASE

This appeal arises from the District Court's order enforcing the settlement agreement the parties read into the record on December 17, 2012.

The action was filed in state court on June 4, 2012, when Plaintiffs-Appellants filed their complaint against Defendants-Appellees.  (Doc. 1-1, PageID# 8–46.)  Defendants-Appellees timely removed the action to the District Court on July 6, 2012.  (Doc. 1, PageID# 1.)

The District Court conducted a preliminary pretrial conference, and the parties engaged in discovery. Following the completion of that discovery, the parties appeared before the District Court at a status conference on December 17, 2012. (Dec. 17, 2012, Tr. of Proceedings, Doc. 37.) During that status conference, the District Court ordered the parties to conduct settlement discussions, and, pursuant to those discussions, a settlement was reached and read into the record that day. (*Id.* at 41, PageID# 511.)

Following the status conference, the Plaintiffs-Appellants decided they did not intend to abide by the settlement terms that had been read into the record. Thus, on January 15, 2013, Defendants-Appellees filed a motion to enforce the settlement. (Defs.' Mot. to Enforce Settlement, Doc. 20, DocID# 152.) The District Court held an evidentiary hearing on the motion to enforce settlement on February 13, 2013, and determined that it had subject-matter jurisdiction over the dispute, the settlement had been reached, and the Plaintiffs' then attorney had been authorized to enter into that settlement. (Feb. 13, 2013 Tr. of Proceedings at 45–48, Doc. 38, DocID# 559–62.) The Court followed its oral ruling with the March 1, 2013 Order enforcing the settlement that is the subject of this appeal. (Doc. 26, PageID# 236.)

3

## STATEMENT OF FACTS

In 2010, Plaintiffs-Appellants Mark and Michelle Fritz and Fritz Dairy Farm LLC (the "Fritzes") entered into oil and gas lease agreements with Kenyon Energy, LLC. (Lease, Doc. 1-1, PageID# 19.) The Fritzes negotiated the leases with an independent contractor, Richard Owen, who was acting as an agent of Kenyon Energy, LLC. (Answer, ¶¶ 5–7, Doc. 6, PageID# 110.) The leases were subsequently assigned to Chesapeake Exploration, L.L.C. (*Id.* at ¶ 12.)

In June 2012, the Fritzes filed this action in Ohio state court, claiming that the leases, as recorded with the Carroll County, Ohio, Recorder's office, were void as a result of alleged fraudulent alteration to the terms of the documents. (Complaint, Doc. 1-1, PageID# 13.) Specifically, the Fritzes claimed that the five-year extension provision in the recorded lease should have been stricken from the recorded lease before filing. (*Id.*)

Chesapeake removed the case to the Northern District of Ohio. (Notice of Removal, Doc. 1, Page ID # 1.) Each defendant provided declarations establishing that they were citizens of states other than Ohio for diversity purposes. (Declarations, Doc. 1-3, 1-4, 1-5, PageID#: 56–62.) Specifically, Richard Owen declared that he is "a permanent resident of the state of Oklahoma" and that he permanently resides at "411 Cambridge Rd., Midwest City, Oklahoma 73130." (Decl. of Richard Owen, Doc. 1-5, PageID# 61.) (*Id.*) In his declaration, he

explained that he worked as a contractor for Kenyon Energy and that it was customary for him to "travel to the location of newly discovered oil and gas plays to evaluate title records and obtain leasehold interests to mineral rights."  (*Id.*) And, although Plaintiffs' complaint averred that he was an Ohio resident residing at 5280 Broadmoor Circle, #218, North Canton, Ohio 44720, that address was for a Residence Inn, where Owen "temporarily" stays "while engaging in temporary business in Ohio." (*Id.*)

The parties appeared before the District Court for a status conference on December 17, 2012.  The Fritzes were present at the status conference and attorney Steven Leiby ("Attorney Leiby") appeared on their behalf.  (Dec. 17, 2012 Tr. of Proceedings at 3, Doc. 37, PageID# 473.)  Plaintiffs had just fired their previous counsel and Attorney Leiby became the fourth counsel to represent Plaintiffs' related to this matter (with current appellate counsel later becoming the fifth).  (*Id.* at 4, 24, PageID# 474, 494.)

Under direction from the District Court, the parties engaged in settlement negotiations for several hours.  (*Id.* at 34, PageID# 504.)  Subsequently, Attorney Leiby, in the Fritzes' presence, represented to the Court that they had made an offer to Chesapeake and that Chesapeake was working to obtain authority to accept the offer.  (*Id.* at 35, PageID# 505.)  After strongly emphasizing the need for individuals with settlement authority to be present, the District Court allowed the

5

Fritzes to leave the settlement conference. (*Id.* at 38, PageID# 508.) The District Court released the Fritzes only after requiring them "to be certain that their attorney could continue negotiations." (Order, Doc. 26, PageID# 237.) The Fritzes "assured the Court that this was the case and left the status conference." (*Id.*)

The parties reached a settlement, the terms of which were read into the sealed record before the Court. The salient terms of the settlement agreement are as follows:

- Plaintiffs will be paid a sum of money (the amount of which is confidential);

- The lease would be amended to provide for a straight 7.5-year term from the original execution date, instead of the 5-year lease with a 5-year extension option that is in the recorded lease and disputed by the Fritzes; and

- The lease would be amended to provide for additional water protection and reclamation clauses requested by the Fritzes.

(Dec. 17, 2012 Tr. of Proceedings at 39–41, Doc. 37, PageID# 509–11.) In exchange for these terms, Plaintiffs agreed to release their claims and dismiss their action. (*Id.* at 41, PageID# 511.) The Court confirmed with Attorney Leiby, whom the Fritzes had left to conclude the settlement negotiations, that he had "full

and complete settlement authority." (*Id.* at 39, PageID# 509.)  As the settlement was read into the record, the Court asked if the parties wished to include a confidentiality agreement.  (*Id.* at 41, PageID# 511.)  The parties agreed that the amount of compensation would be kept confidential.  (*Id.*)

In accord with their representations to the Court they would do so, Attorney Leiby prepared the draft settlement agreement and Chesapeake's counsel prepared the documents necessary to modify the leases.  (Dec. 17, 2012 Tr. of Proceedings at 40–41, Doc. 37, PageID# 510–11.)  Attorney Leiby sent the proposed settlement agreement to Chesapeake's counsel on January 2, 2013.  (Mot. to Enforce Settlement, Ex. 1, PageID# 162; Feb. 13, 2013 Tr. of Proceedings at 38, Doc. 38, PageID# 552.)  After exchanging drafts of these documents over several weeks, Chesapeake's counsel received an e-mail from Attorney Leiby on January 14, 2013, stating that:

> As of 11:55 AM today, I do not have any commitment from my clients regarding the terms of the settlement agreement or the lease amendment and ratification.  At this point, my hands are tied.  I will inform you of the minute I receive, if I do, a definitive commitment from my clients.

(Mot. to Enforce Settlement, Ex. 4, Doc. 20-4, PageID# 202.)  On January 15, 2013, Chesapeake's counsel received a 14-page statement from Plaintiffs, apparently sent without knowledge of their counsel, that had also been sent to the Court and the Plaintiffs' current and former attorneys.  (Pls.' Statement to Court,

7

Doc. 27, PageID# 239.)   Plaintiffs' statement stated that when they "returned home" from the Settlement Conference and "collected our senses," they determined that that "were again being taken advantaged up [sic]" and did not intend to honor the "terms and provisions of the settlement."  (*Id.* at PageID# 215.)

On January 15, 2013, Chesapeake filed a motion to enforce the valid and enforceable settlement that had been read into the record before the District Court. (Mot. to Enforce Settlement Agreement, Doc. 20, PageID# 152.)

The District Court conducted an evidentiary hearing on Chesapeake's motion on February 13, 2013.  (*See* Feb. 13, 2013 Tr. of Proceedings, Doc. 38.)  At the hearing, Attorney Leiby testified that he "was given full authority" by the Fritzes before they left the settlement negotiations.  (*Id.* at 17, PageID# 531.)  After reviewing the terms of the settlement as they were read into the record, Mr. Leiby testified as followed:

> Q.    Were you authorized by your clients to enter into a settlement that contained those terms?
>
> A.    Yes.

(*Id.* at 36, PageID# 550.)   Mrs. Fritz also testified and acknowledged that she understood that when the Fritzes left the settlement negotiations, Attorney Leiby was "going to read the settlement into the record" and that he was "her authorized representative" to engage in those discussions "with the Court."  (*Id.* at 31, PageID# 545.)

Attorney Leiby further testified that later that day, he called Mr. and Mrs. Fritz to "to confirm what had happened and to confirm the final terms of the agreement that they had authorized me to propose and enter into on their behalf." (*Id.* at 16–17, PageID# 530–31.)  He testified that he followed up that same day with an e-mail to Mrs. Fritz "confirming the terms of the settlement agreement point by point and reminding her of the duty of confidentiality."  (*Id.* at 17, PageID# 531.)  He further testified that there were "at least four, if not, five pieces of correspondence from me to Mr. and Mrs. Fritz about the settlement, including a draft of the settlement agreement, including Mr. McGranor's drafts of the lease amendments" and that he "received no objections to those."  (*Id.*)  Finally, he testified that "it was not until January 7, 21 days after the settlement[,] that I received objections to its terms."  (*Id.*)

On March 1, 2013, the District Court granted Chesapeake's motion to enforce settlement.  (Order, Doc. 26, PageID# 236.)  The District Court found that jurisdiction had been established because the evidence showed that Richard Owen was a resident of Oklahoma, not Ohio.  (*Id.*)  The Court also found that the parties had entered into an enforceable settlement agreement because the evidence showed that the Fritzes had given Attorney Leiby full settlement authority.  (*Id.*)  The court noted that the Fritzes had been permitted to leave the settlement negotiations only after "[t]he Court specifically discussed that matter with the Fritzes and told them

to be certain that their attorney could continue negotiations. They assured the Court that this was the case and left the status conference." (*Id.* at PageID# 237.) In making its determination, the Court considered the testimony of both Attorney Leiby and Mrs. Fritz and found Attorney Leiby to be more credible. (*Id.*).

The Fritzes have appealed from this March 1, 2013 Order.

## SUMMARY OF THE ARGUMENT

This appeal is about nothing more than the Fritzes' buyers' remorse. The Fritzes knowingly and willingly entered into a settlement with Chesapeake in open court after the parties engaged in hours of negotiation. The Fritzes now seek to escape that agreement after they have had second thoughts. They seek to avoid their settlement obligations on two grounds. First, they allege that the District Court did not have subject-matter jurisdiction because they claim that Defendant Owen was really an Ohio citizen at the time the action was removed. Second, the Fritzes claim that the settlement agreement read into the record before the Court was not valid because their attorney, whom they knowingly left at court for the express purpose of concluding the settlement negotiations on their behalf, did not have authority to settle their case.

The Fritzes' jurisdictional argument is meritless. The District Court reviewed the evidence before it and made a factual determination that Defendant Owen was a resident of Oklahoma. The District Court did not commit clear error

10

in making this factual determination.  Because all Defendants were citizens of states other than Ohio, complete diversity of citizenship existed, and the District Court had jurisdiction.

The Fritzes' arguments about the settlement itself are also flawed.  The Court properly found that a valid and enforceable settlement agreement existed, and the Fritzes fail to demonstrate that the Court abused its discretion in making that finding.  The evidence demonstrates that Attorney Leiby had settlement authority in two ways.  First, the actions of the Fritzes "clothed" Attorney Leiby with apparent settlement authority when they left him at a settlement conference to conclude settlement negotiations.  Second, the District Court heard testimony at the evidentiary hearing that the Fritzes expressly gave Attorney Leiby actual authority to enter into the settlement agreement.  The District Court's findings are supported by the evidence and should not be second-guessed on appeal.

After authorizing Attorney Leiby to settle their case, the Fritzes are obliged to comply with the terms of the settlement as agreed to by their duly authorized attorney.  If Attorney Leiby somehow exceeded his settlement authority, the Fritzes' remedy lies against him, not the rescission of the settlement agreement.  Finally, the limited confidentiality included in the agreement was not an essential term of the agreement and should not be permitted to disrupt the settlement agreement.

11

The evidence demonstrates that the Fritzes are simply experiencing buyers' remorse. They only had problems with the terms of the settlement after they had gone home and "thought about it." The Fritzes received emails from their counsel describing the terms of the settlement and they reviewed the draft settlement agreement—all without objection. While the Fritzes may have begun to regret the settlement that they entered into over time, that does not permit them to shirk their responsibilities to comply with the agreement.

## ARGUMENT

**I.    The District Court Correctly Concluded That Richard Owen Was a Citizen of Oklahoma, Not Ohio. Thus, the District Court Had Subject Matter Jurisdiction Over This Case.**

The District Court considered the evidence and made a factual determination that, contrary to the Fritzes' allegations, Richard Owen was a citizen of Oklahoma, not Ohio. Because all Defendants were citizens of states other than Ohio, diversity jurisdiction was established in this action. This Court reviews a district court's factual determinations regarding subject-matter jurisdiction under a clear error standard. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012). Under clear-error review, "if the district court's account is plausible in light of the record viewed in its entirety, the court of appeals may not reverse." *King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012) (internal citations and quotations omitted).

For purposes of the diversity requirement in 28 U.S.C. § 1332, state citizenship is equated with domicile. *See Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir. 1990). Establishment of a individual's domicile is determined by two factors: residence in the new domicile and the intention to remain there. *Id.* (citing *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48, 109 S. Ct. 1597, 1608, 104 L. Ed. 2d 29 (1989)). An individual may have only one domicile and a previous domicile is not lost until a new one is established. *Id.* (citing *Kaiser v. Loomis*, 391 F.2d 1007 (6th Cir. 1968)).

The evidence before the District Court demonstrated that Owen was a citizen of Oklahoma, not Ohio. Owen declared that he was a "*permanent* resident of the state of Oklahoma." (Decl. of Richard Owen, Doc. 1-5, PageID# 61 (emphasis added).) In his declaration, Owen explains that he was "temporarily" staying in Ohio while he engaged in "temporary" business in Ohio. (*Id.*) Indeed, the address at which the Fritzes allege Owen resided is a hotel. (*Id.*) This temporary form of housing further demonstrates that Owen was in Ohio temporarily, did not intend to remain in Ohio, and thus was not a citizen of Ohio. *See Persinger v. Extendicare Health Servs.*, 539 F. Supp. 2d 995, 998 (S.D. Ohio 2008) ("The temporary nature of the housing . . . further undermines any positive determination that the decedent intended to remain in Ohio.") Based on this evidence, the trial properly concluded that Owen was not a citizen of Ohio. (Mar. 1, 2013 Order, Doc. 26, PageID# 236.)

The Fritzes provided no evidence to rebut Owen's established citizenship in Oklahoma. *See Kaiser v. Loomis*, 391 F.2d 1007, 1010 (6th Cir. 1968) (after party provides evidence to establish domicile, opposing party has burden to show that domicile has changed by a preponderance of the evidence). The Fritzes argue that because Owen applied to be a notary public in Ohio, which the Fritzes allege required Owen to certify that he was a resident of Ohio, he somehow established his domicile in Ohio. However, Owen's application to be a notary in Ohio to support his temporary work here does not constitute the type of evidence necessary to prove that Owen intended to remain in Ohio such that his domicile changed from Oklahoma to Ohio. *See*, *e.g.*, *Novel v. Zapor*, No. 2:12-cv-737, 2013 U.S. Dist. LEXIS 39473, *19 (S.D. Ohio Mar. 21, 2013) (finding that the "defendant had established a new domicile where he maintained his home, sent his children to school, obtained a driver's license, and operated his business"); *Roehm v. Wal-Mart Stores, Inc.*, No. 07-10168, 2007 U.S. Dist. LEXIS 40773, *5–6 (E.D. Mich. June 4, 2007) (finding that "Plaintiff established a domicile in Arkansas" because "she purchased a house in Arkansas, listed her Michigan house for sale, moved her family to Arkansas, registered her vehicles in Arkansas, and used her Arkansas address to submit her income tax returns"). The District Court is correct that "[r]egardless of whether or not Owen placed false statements on that [notary] form,

his sworn affidavit before this Court establishes that he is not a resident of Ohio." (Mar. 1, 2013 Order, Doc. 26, PageID# 236.)

The Fritzes improperly rely on a string of Ohio cases that analyze the concept of residency under Ohio law.  How Ohio courts define residency is irrelevant to how Federal courts determine citizenship and domicile under 28 U.S.C. § 1332.  *See Kaiser v. Loomis*, 391 F.2d at 1009 (holding that domicile is not synonymous with residency for purposes of 28 U.S.C. § 1332).  And, even the Ohio cases cited by the Fritzes recognize that residency and domicile are different concepts and that an individual may be a resident of multiple states.  *See Snelling v. Gardner*, 590 N.E.2d 330, 333 (Ohio Ct. App. 1990).  To the extent that these Ohio cases do address intent to remain as a factor of residency under Ohio law, they too require evidence of intent to remain far more significant than an application to be a notary.  *See, e.g.*, *State ex rel. Duncan v. Portage Cty. Bd. of Elections*, 875 N.E.2d 578, 581 (Ohio 2007) (finding that driver's license, car registration, mailing address for property tax bills established city council candidate's legal residence for election purposes under Ohio law)

The Court did not commit clear error in deciding that Owen was a citizen of Oklahoma and not Ohio.  The evidence demonstrated that Owen did not intend to remain in Ohio at the hotel and intended to return to his permanent residence in

Oklahoma when his temporary business was concluded.  Thus, the District Court had jurisdiction to enforce the parties' valid and enforceable settlement agreement.

## II.    The District Court Properly Determined That the Parties Entered Into a Valid and Enforceable Settlement Agreement.

The District Court did not abuse its discretion in determining that the entered into a valid and enforceable settlement agreement.  This Court reviews a district court's decision to enforce a settlement agreement under an abuse of discretion standard and will reverse only if the District Court "'committed a clear error of judgment" or if it 'improperly applie[d] the law or uses an erroneous legal standard.'"  *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 645 (6th Cir. 2001) (quoting *Huey v. Stine*, 230 F.3d 226, 228 (6th Cir. 2000)).  Ohio law guides this Court's determination of whether an enforceable settlement agreement exists. *See Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992).

As represented by Appellants in their brief, "the question comes down to whether [Attorney] Leiby had authority" to settle this case.  (Appellants' Br. at 17.) If Leiby had settlement authority, as the District Court found that he did, there should be no question that the parties reached an agreement on all essential settlement terms.  *See RE/MAX*, 271 F.3d at 645–46.  These essential terms were placed on the record—specifically, payment of a sum to Plaintiffs, modification of the lease to a 7.5-year primary term instead of a 5-year term with a 5-year

16

extension, and modification of the leases to add additional water-quality testing and reclamation provisions favorable to Plaintiffs, in exchange for a release of Plaintiffs' claims. (Dec. 17, 2013 Tr. of Proceedings at 39–41, Doc. 37, PageID# 509–11.) An oral settlement agreement entered into in the presence of the court, as occurred here, constitutes a binding settlement contract. *See Spercel v. Sterling Indus., Inc.*, 285 N.E.2d 324, 324 (Ohio 1972) (paragraph one of the syllabus).

The District Court did not abuse its discretion in finding that the Fritzes' attorney, Stephen Leiby, had authority to enter into the settlement on behalf of the Fritzes. At a minimum, the Fritzes took actions that clothed Attorney Leiby with apparent settlement authority. And, as demonstrated at the evidentiary hearing, the Fritzes also expressly gave him actual settlement authority. The Fritzes might be experiencing buyers' remorse, but that does not permit them to now evade the results of the settlement that their authorized attorney entered into on their behalf.

### A.    Attorney Leiby had authority to settle this case on the Fritzes' behalf.

Under Ohio law, an attorney, acting "'within the scope of his actual authority, expressly or impliedly conferred'" may bind a client. *See Rubel v. Lowe's Home Ctrs., Inc.*, 597 F. Supp. 2d 742, 744 (N.D. Ohio 2009) (quoting *Damon's Mo., Inc. v. Davis*, 590 N.E.2d 254 (Ohio 1992)).

An attorney's authority to settle a case "need not be express, but may be ascertained from the surrounding circumstances." *See Brinkr, Inc. v. United Riggers, Inc.*, No. 1999CA00179, 2000 Ohio App. LEXIS 678, *6 (Ohio Ct. App. Feb. 22, 2000) (citing *Elliott v. General Motors Corp.*, 595 N.E.2d 463, 464 (Ohio Ct. App. 1991)).   When a client has "clothed [an attorney] with apparent authority," the client will be bound by the attorney's actions. *Schalmo Builders, Inc. v. Zama*, No. 90782, 2008-Ohio-5879, ¶ 18 (Ohio Ct. App. Nov. 13, 2008); *see also PNC Mortg. v. Guenther*, No. 25385, 2013-Ohio-3044, ¶ 13 (Ohio Ct. App. July 12, 2013) (upholding finding that attorney had apparent authority to settle when clients "represented to [opposing] counsel by their actions" that attorney had authority to settle).

Here, the circumstances surrounding the settlement and the Fritzes behavior demonstrated that the Fritzes had, at a minimum, impliedly clothed Attorney Leiby with settlement authority:

- The settlement occurred at a conference at which the Court required the attendance of parties with full settlement authority.  (Dec. 17, 2012 Tr. of Proceedings at 36, Doc. 37, PageID# 506.)

- The Fritzes and Attorney Leiby engaged in hours of settlement negotiations with Chesapeake and its counsel.  (Feb. 2, 2013 Tr. of Proceedings at 9, Doc. 38, PageID# 523.)

18

- The Fritzes were in the courtroom when Attorney Leiby announced that the Fritzes had made a settlement offer and that the Defendants were obtaining authority to accept the offer.  (Dec. 17, 2012 Tr. of Proceedings at 35–38, Doc. 37, PageID# 505–08.)

- Before the terms of the settlement agreement was read into the, the Fritzes left the settlement conference under an admonition from the trial that they should "be certain that their attorney could continue negotiations."  (Order at 2, Doc. 26, PageID# 237.)

- After the terms of the settlement agreement were read into the record, Attorney Leiby represented to the Court that he had "full and complete settlement authority."  (Dec. 17, 2012 Tr. of Proceedings at 39–40, Doc. 37, PageID# 509–510.)

 In sum, the Fritzes participated in settlement negotiation and then left the negotiations knowing that its attorney would conclude the settlement; under these facts, the District Court did not abuse its discretion in determining that Attorney Leiby had settlement authority.

Furthermore, the District Court conducted an evidentiary hearing before it determined that Attorney Leiby had *actual* authority to enter into the settlement agreement.  After holding an evidentiary hearing, a district court may properly find that an attorney had actual authority to settle a case, even if the client contests that

19

authority. *See Promotional Prods. Group, Inc. v. Sunset Golf, LLC*, No. 2009-P-0041, 2010-Ohio-3806, ¶ 54 (Ohio Ct. App. Aug. 13, 2010). Great deference is given to a district court's determination of whether the client's or the attorney's testimony is more credible when that testimony is in conflict. *See id.* at 58; *see also Anderson v. Bessemer City*, 470 U.S. 564, 575, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985) (holding that great deference is due a district court's findings "based on determinations regarding the credibility of witnesses").

At the hearing, Attorney Leiby testified that he "was given full authority" by the Fritzes. (Feb. 13, 2013 Tr. of Proceedings at 17, Doc. 38, PageID# 531.) After reviewing the terms of the settlement as read into the record, Mr. Leiby again confirmed that his clients had expressly authorized him to enter into a settlement agreement containing those terms. (*Id.* at 36, PageID# 550.) Although Mrs. Fritz provided a different account regarding the extent of Attorney Leiby's authority, the Court found Attorney Leiby's testimony to be more credible. This Court should not overrule the District Court's findings based on witness credibility at an evidentiary hearing.

Thus, the District Court did not abuse its discretion in finding that Attorney Leiby had settlement authority. The Fritzes had cloaked Attorney Leiby with apparent settlement authority and there was evidence demonstrating that the Fritzes also expressly gave Attorney Leiby actual settlement authority. To be clear, and

20

contrary to the Fritzes' arguments, it is not the simple fact that the Fritzes hired Attorney Leiby or on any action taken by Attorney Leiby that supports a finding of settlement authority.  Instead, it is the affirmative actions taken by the Fritzes on the day of settlement that support the District Court's decision.

### B.    After an authorized attorney settles the case, a party may not object to or revoke the terms of that settlement.

The Fritzes are bound by the terms of the settlement that their authorized attorney entered into on their behalf, even if the agreement disappointed them or exceeded the scope of the attorney's authority.  "If a client gives an attorney the authority to negotiate a settlement, but is later disappointed with the agreement's terms, the court will enforce the agreement."  *Rubel v. Lowe's Home Ctrs., Inc.*, No. 3:07CV2659, 2008 U.S. Dist. LEXIS 38158, at *6 (N.D. Ohio Mar. 6, 2008) (citing *Argo Plastic Prods. Co. v. City of Cleveland*, 474 N.E.2d 328 (Ohio 1984)). In *Argo*, an attorney had authority to settle a case up to $2,500 but then settled the case for $500,000.  474 N.E.2d at 331.  The Supreme Court of Ohio held that the client was bound by the settlement even "where its attorney exceeds his settlement authority" and must seek relief through a malpractice suit against the attorney and not by revoking the settlement.  *Id.*  The Supreme Court held that it would be unfair to penalize a defendant by keeping the suit alive after settlement based on the misconduct of the plaintiff's authorized attorney.  *Id.*  In other words, where an

authorized "attorney exceeds his settlement authority, that misconduct must be imputed to the client and the client's remedy lies elsewhere" than revoking the settlement agreement. *Lepole v. Long John Silver's*, No. 2003-P-0020, 2003-Ohio-7198, ¶ 16 (Ohio Ct. App. Dec. 31, 2003) (enforcing a settlement agreement); *see also Mollis v. Rox Constr. Co.*, No. 92-T-4688, 1992 Ohio App. LEXIS 6083, *12 (Ohio Ct. App. Dec. 4, 1992) (holding that "even if attorney . . . exceeded her settlement authority . . . her conduct, i.e., the settlement of the case, was correctly imputed to her clients").

Thus, because the Fritzes expressly and impliedly authorized Attorney Leiby to settle the case on their behalf, they are bound by the terms of the settlement even if they are disappointed with the results or if the agreement exceeded Attorney Leiby's authority.  As the District Court correctly stated, "[w]hether a specific term was relayed to the Fritzes before or after the Court put the terms on the record is immaterial to whether Attorney Leiby" had full authority to settle the case.  (Order, Doc. 26, PageID# 238.)  Attorney Leiby had "full authority" to settle the case, and the Fritzes are therefore bound by the results of his exercise of that authority.

### C.    Confidentiality Was Not an Essential Term of the Settlement Agreement.

Even if this Court were to find that Attorney Leiby acted outside his settlement authority by agreeing to confidentiality regarding the monetary amount of the settlement—which he did not—and if this Court were to find that the Fritzes are not bound by the actions of their authorized attorney—which they are—the parties *still* reached a valid enforceable settlement agreement because confidentiality was not an essential term of the settlement.  *See Ruffian, LLC v. Hayes*, No. 09AP-948, 2011-Ohio-831, ¶ 17 (Ohio Ct. App. Feb. 24, 2011) ("An agreement is enforceable if it encompasses the essential elements of the bargain.") (quoting *Mr. Mark Corp. v. Rush, Inc.*, 464 N.E.2d 586 (Ohio Ct. App. 1983)).

The essential terms of the settlement agreement were those that the parties specifically negotiated and then entered into the record, such as the amount of monetary compensation, the amendment to the lease, the water protection, and the agreement to dismiss this case.  (Dec. 17, 2013 Tr. of Proceedings at 39–41, Doc. 37, PageID# 509–11.)  Confidentiality was not a term of such importance that either side staked the progress on the negotiations on its inclusion or exclusion. *See Sheng v. Starkey Laboratories, Inc.*, 117 F.3d 1081 (8th Cir. 1997) (finding that confidentiality provision was a nonessential term because the negotiations did not hinge on the wording of a confidentiality clause); *Sands v. Wagner & Hunt,*

23

*P.A.*, No. 09-60557, 2009 U.S. Dist. LEXIS 77169, *14 (S.D. Fla. Aug. 28, 2009) (enforcing settlement agreement after finding that confidentiality provision not agreed to was non-essential).  Indeed, neither party raised this issue during negotiations; it only came up at the District Court's suggestion.  (Dec. 17, 2013 Tr. of Proceedings at 41, Doc. 37, PageID# 511.)  Chesapeake would not have allowed a disagreement over confidentiality to destroy a settlement based on the essential terms that were read into the record before the District Court.

The non-essential nature of the confidentiality term is further evidenced by its severely limited scope.  The parties simply agreed to keep the monetary amount of the settlement confidential.  When asked why the inclusion of the confidentiality requirement was important to her, Mrs. Fritz testified that she wants "to be able to speak as to what is the truth as to what is happening in our area."  (Feb. 13, 2013 Tr. of Proceedings at 28–29, Doc. 38, PageID# 542–43.)  In the Fritzes' letter to the District Court, they expressed concern that they would not be permitted to defend their reputation in the community and discuss the merits and outcome of this litigation.  (Pls.' Statement to Court, Doc. 27, PageID# 249.)  The agreement to keep the *amount* of the settlement confidential does not prohibit the Fritzes from discussing the pertinent leases, their allegations, or these proceedings with anyone in the community.

24

The Fritzes should not be permitted to evade the enforcement of the essential terms of the settlement agreement simply because its authorized attorney agreed to a non-essential and limited confidentiality term.

### D.    The Fritzes' Buyers' Remorse Is Insufficient Grounds to Nullify a Valid, Enforceable Settlement.

The evidence demonstrates that the Fritzes simply had a change of heart after agreeing to the terms of the settlement, and now wish this Court to throw out the settlement to relieve them of buyers' remorse.  The letter from the Fritzes to the Court acknowledges that only when the Fritzes got home from the settlement and "collected [their] senses" did they begin to question the terms of the settlement feel "taken advantage[] of."  (Pls.' Statement to Court, Doc. 27, PageID# 250.)  The Fritzes' backing away from their settlement agreement was a slow process. Attorney Leiby detailed the terms of the agreed-upon settlement through e-mail correspondence the day of the settlement, but it was weeks before the Fritzes announced any opposition to the terms of the settlement.  (Feb. 13, 2013 Tr. of Proceedings at 17, Doc. 38, PageID# 531.)  When they did announce their opposition, the Plaintiffs repeatedly argued to the District Court that, upon further reflection, they had determined that the settlement agreement would leave them in a worse position than if no agreement had been reached.  (Pls.' Statement to Court, Doc. 27, PageID# 249–50.)

When parties enter into an in-court settlement agreement, "'neither a change of heart nor poor legal advice is a reason to set aside a settlement agreement.'" *Murray v. Murray*, No. L-09-1305, 2011-Ohio-1546, ¶ 21 (Ohio Ct. App. Mar. 31, 2011) (quoting *Perko v. Perko*, No. 2001-G-2403, et al., 2003-Ohio-1877, ¶ 27 (Ohio Ct. App. Apr. 11, 2003)).  The Fritzes may no longer like the terms of the settlement they agreed to; they may have been under stress when they agreed to the settlement terms; they may even feel like they received poor advice from their attorney who had recently begun his representation of the Fritzes.  But none of these facts permits the Fritzes to nullify the valid and enforceable settlement agreement in this case.

## CONCLUSION

The District Court properly found that it had jurisdiction over this case.  It did not commit clear error in finding that Owen was a citizen of Oklahoma and not Ohio.  The District Court also properly found that the parties entered into a valid and enforceable settlement in this matter.  The District Court did not abuse its discretion in finding that the Fritzes had given Mr. Leiby authority to settle this case.  The Fritzes not only cloaked Mr. Leiby with apparent authority to settle their case, but evidence at the evidentiary hearing demonstrated that they expressly gave him actual authority to settle their case.  The Fritzes are now bound by the terms

that their authorized attorney agreed to on their behalf.  For these reasons, the

District Court's Order enforcing the settlement should be affirmed.

Respectfully submitted,

*/s/ Timothy B. McGranor*
John K. Keller (0019957)
Timothy B. McGranor (0072365)
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
Columbus, OH 43215
(614) 464-6400 / Fax: (614) 719-4954
E-mail:      jkkeller@vorys.com
                tbmcgranor@vorys.com

*Attorneys for Defendants-Appellees*
*Chesapeake Exploration, L.L.C., Richard*
*Owen, and Kenyon Energy, LLC*

## CERTIFICATION OF COMPLIANCE WITH WORD LIMIT

Pursuant to 6th Cir. R. 32(a), the undersigned counsel certifies that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7).  Exclusive of the exempted portions allowed pursuant to Fed. R. App. P. 32(a)(7)(B)(iii), the brief contains 6,008 words.  The brief was prepared in Microsoft Word, using Times New Roman 14 point font.

*/s/ Timothy B. McGranor*
Timothy B. McGranor (0072365)

## CERTIFICATE OF SERVICE

The undersigned certifies that on December 17, 2013, a copy of the foregoing Brief was filed electronically with the Court's CM/ECF system.  Notice of this filing will be sent to all parties by operation of the Court's electronic system.  Parties may access this filing through the Court's CM/ECF system.

*/s/ Timothy B. McGranor*
Timothy B. McGranor (0072365)

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Docket Number ("Doc.") | Date | Title | PageID Range |
|---|---|---|---|
| 1 | 7/6/2012 | Notice of Removal | 1–67 |
| 1-1 | 6/4/2012 | Complaint | 8–46 |
| 1-3 | 7/6/2012 | Declaration of Joseph A. Tarantelli in Support of Notice of Removal | 56–57 |
| 1-4 | 7/6/2012 | Declaration of Michael V. To in Support of Notice of Removal | 59 |
| 1-5 | 7/6/2012 | Declaration of Richard Owen in Support of Notice of Removal | 61–62 |
| 6 | 7/13/2013 | Answer to Complaint | 109–113 |
| 20 | 1/15/2013 | Defendants' Motion to Enforce Settlement | 152–218 |
| 26 | 3/1/2013 | Order enforcing settlement | 236–238 |
| 27 | 3/8/2013 | Plaintiffs' Statement to District Court regarding settlement | 239–420 |
| 37 | 12/17/2012 | Transcript of Proceedings | 471–514 |
| 38 | 2/13/2013 | Transcript of Proceedings | 515–564 |