IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| FRITZ DAIRY FARM, LLC, ET AL. ) | Case No. 13-3379 |
| ) | |
| Plaintiff-Appellant ) | |
| ) | |
| v. ) | |
| ) | |
| CHESAPEAKE EXPLORATION, ) | On appeal from the U.S. District |
| LLC, ET AL. ) | Court, Northern District of Ohio |
| Defendant-Appellee. ) | Case No.: 5:12-CV-1736 |

---

## REPLY BRIEF OF PLAINTIFF-APPELLANT

---

WARNER MENDENHALL, 0070165
ALYSSA ALLEN, 0082715
THE LAW OFFICES OF
WARNER MENDENHALL, INC.
190 N. Union St., Ste. 201
Akron, OH  44304
330-535-9160; 330-762-9743 fax


ATTORNEYS for PLAINTIFF-
APPELLANT

JOHN KELLER, 0019957
TIM MCGRANOR, 0072365
VORYS, SATER, SEYMOR &
PEASE, LLP
52 E. Gay St., POB 1008
Columbus, OH  43216-1008
614-464-6389


ATTORNEYS for
DEFENDANT-APPELLEE

# TABLE OF CONTENTS

Table of Contents ........................................................................ i.

Table of Authorities ................................................................... ii.

Argument ............................................................................... 1.

Conclusion ............................................................................ 13.

Certificate of Compliance With FRAP 32(A)(7) ......................................... 15.

Certificate of Service ................................................................ 16.

Designation of Relevant District Court Documents ..................................... 17.

# <u>TABLE OF AUTHORITIES</u>

## *Cases*

*Adkins v. Estate of Place,* 180 Ohio App. 3d 747 .......................................... 10.

*Argo Plastic Prods. Co. v. City of Cleveland,* 474 N.E. 2d 328 (Ohio 1984) ..9.

*Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations* (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134. .................................................... 12.

*GTE Automatic Electric Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146 ....... 9.

*Hocking Valley Community Hosp. v. Community Health Plan of Ohio*, Hocking App. No. 02CA28, 2003-Ohio-4243, 2003 WL 21904586, at ¶ 11. ............................................................................................................12.

*Kistler v Kistler*, 11th Dist., No. 2003-T-0060, 2004-Ohio-2309 ................. 11.

*Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, at ¶ 16. ...............................................................................................12.

*Lepole v.Long John Silver's*, 2003-Ohio-7198 (Ohio Cr. App. Dec. 31 2003) ............................................................................................... 9.

*Mollis v. Rox Constr. Co.*, 1992 Ohio App. LEXIS 6083 (Ohio Ct. App. Dec. 4, 1992). ............................................................................................ 9.

*Mr. Mark Corp. v. Rush, Inc*. 464 N.E.2d 586 (Ohio Ct. App. Feb 24, 2011).10.

*Rubel v Lowe's Home Ctrs*.  2008 U.S. Dist. LEXIS 38158 (N.D. Ohio Mar. 6, 2008), ............................................................................................ 9.

*Sheng v. Starkey Labs*, 117 F.3d 1081 .................................................. 10, 11.

*State ex rel. Smith v. Johnson*, 12 Ohio App.2d 87, 231 N.E.2d 81 (1967) .... 1.

*Svette v. Svette*, 11th Dist. NO. 98-G-2168, 1999 Ohio App. LEXIS 3981...11.

*Telxon Corp. v. Smart Media of Delaware, Inc.*, Summit App. Nos. 22098 and 22099, 2005-Ohio-4931, 2005 WL 2292800 at ¶ 40 .................................... 12.

*Yeager v. Yeager*, 11th Dist., 2002-G-2453, 2004-Ohio-1959 ...................... 11.

**Statutes**

Ohio Const. Art. XV § 4 ................................................................................. 1.
R.C. § 147.01 ................................................................................................. 1.
R.C. § 147.04 ............................................................................................ 1, 2.
R.C. §147. 07 ................................................................................................. 2.
R.C. § 147.99 ................................................................................................. 2.
R.C. §147. 07 ................................................................................................. 2.
R.C. §147. 07 ................................................................................................. 2.

**Rules and Other Authorities**

Civ.R. 60      ........................................................................................ 9, 10.

iii

<u>**ARGUMENT**</u>

**Notary Richard Owen**

Richard Owen swore he was an Ohio resident to be eligible to be a notary public.  R.C. § 147.01 requires non-attorney notaries to be "a legal resident of this state…."  R.C. § 147.01(C) clarifies that "a notary public shall be appointed and commissioned as a notary public for the state.   More importantly, notaries public are public officials of Ohio. *State ex rel. Smith v. Johnson*, 12 Ohio App.2d 87, 231 N.E.2d 81 (1967).  The Ohio Constitution provides that no person shall be appointed to public office unless he or she is at least 18 years of age, a citizen of the state, and qualified to vote in the county in which he or she resides.  Art. XV § 4.

Being a notary public comes with responsibilities.  "Before entering upon the discharge of his duties, a notary public shall provide himself with a seal of a notary public. The seal shall consist of the coat of arms of the state within a circle one inch in diameter and shall be surrounded by the words "notary public," "notarial seal," or words to that effect, the name of the notary public and the words "State of Ohio"… Upon the death, expiration of term without reappointment, or removal from office of any notary public, [a

1

notaries] official register shall be deposited in the office of the county recorder of the county in which he resides." R.C. § 147.04. In addition, "[a] notary public may, throughout the state, administer oaths required or authorized by law, take and certify depositions, take and certify acknowledgments of deeds, mortgages, liens, powers of attorney, and other instruments of writing, and receive, make, and record notarial protests. In taking depositions, he shall have the power that is by law vested in judges of county courts to compel the attendance of witnesses and punish them for refusing to testify." R.C. §147. 07. The consequences for failing to discharge notary duties includes fines and imprisonment. R.C. § 147.99. Thus, notaries are liable in Ohio courts to persons harmed by their wrongful conduct in discharging their notarial duties.

For Richard Owen to be a resident, qualified elector, and an Ohio public official when it is convenient to him and a non-resident when he seeks to avoid the consequences of his actions as an Ohio public official, makes a mockery of the intent of the Ohio Revised Code. The doctrine of estoppel prevents Owen from obtaining his public appointment as a notary public of the state of Ohio and then disclaiming the jurisdiction of its courts by claiming

2

domicile in another state.   As an Ohio notary public, which Owen was at the time of filing of the Fritzes' Complaint, Owen was subject to the jurisdiction of Ohio state courts by virtue of his status as an Ohio public official.

The Court committed plain err when it failed to apply Ohio law and find Richard Owen an Ohio resident for the purposes of jurisdiction at the time of the Fritzes' filing.

**The authority to settle**

The Fritzes did not give Attorney Leiby authority to settle without their express approval.    While at the settlement conference, the Fritzes agreed to some items.  They left court but did not give Attorney Leiby authority to add settlement terms without consulting them.  Judge Adams contemplated the Fritzes' involvement in and approval of the settlement.  The Fritzes left the status conference with a request by Judge Adams to remain available by phone.  Doc. 37, PageID # 509.  However, no one called the Fritzes to authorize a confidentiality clause and no consideration was given for that clause.

3

The record indicates Judge Adams, Attorney Leiby and counsel for Appellees knew he had to confer with his clients.  The court asked Leiby about this:

> THE COURT: I know I've allowed your clients to
> leave given the nature of their occupation. You have -- can
> you represent to the court you have full and complete
> settlement authority and you've conferred with your clients
> and they agreed to the settlement?
> MR. LEIBY: I conferred with my clients. They've
> agreed with the settlement.  Doc #: 37, PageID #: 509

After that conversation the issue of confidentiality arose.  Neither the judge nor the attorneys present indicate the Fritzes were asked about confidentiality as a settlement term.  The Fritzes attorney, Leiby, stated at the settlement hearing he did not discuss confidentiality with his clients.  Doc. 38. Page ID# 554.  Appellee's attorney admitted the same at the evidentiary hearing regarding the settlement:

> MR. MCGRANOR: The confidentiality provision, Your
> Honor, was first raised by Your Honor at the settlement
> conference. It is something that we didn't specifically
> discuss during our negotiations, but it is something that we
> would like to have in the settlement agreement as we stated
> on the record.  Doc. 38, PageID# 557.

Appellees seek to minimize the confidentiality clause and limit it to a payment of funds.  It was not limited.  The transcript of the settlement

4

conference was sealed based on a confidentiality term covering all but

"recorded documents." Doc. 37, PageID# 511, Line 17.

The attorney's negotiations about settlement documents in the weeks

after the settlement conference revealed issues that further show there was no

meeting of the minds and that other terms were still being negotiated.

In a January 2, 2013 email, Attorney Leiby stated to opposing counsel

"My clients have not seen or read the attached Agreement and its terms are,

therefore, subject to their approval." Doc. 20-1, PageID# 161. Then on

January 9, 2013 Leiby again emails opposing counsel:

> In an effort to try to keep this moving, attached please find a revised
> settlement agreement in which I have attempted to take into account
> your comments and requests. Regarding the Amendments and
> Ratifications I have the following observations and requests.
> 1. CHK Utica, L.L.C. and TOTAL E&P USA, INC. have been added.
> Have the leases been assigned in part or in whole to them? If so, please
> provide to me a copy of the assignment(s).
> 2. The Amendments and Ratifications refer to Exhibit A. I discovered
> that I do not have that Exhibit. Please provide a copy to me since, after
> I assumed representation of the Plaintiffs, the records I received were
> limited.
> 3. Regarding the revisions to Exhibit A, found on page 2 of the
> amendments, the language on WATER USAGE should not be replaced
> since there is not comparable language in the substituted language.
> 4. In the Reclamation section, I request that the same provisions apply
> in the event operations are abandoned or the well ceases to produce and
> the equipment is removed. *Id*. PageID# 163.

5

A January 14, 2013 email exchange reveals that lease amendments and
ratifications were still being negotiated:[1]

> From: Stephen P. Leiby [mailto:sleiby@neolaw.biz]
> Sent: Monday, January 14, 2013 5:53 PM
> To: McGranor, Timothy B.
> Subject: RE: Fritz Dairy Farms settlement…
> Tim,
> I appreciate the response to point 3 on the water usage issue. Regarding
> point 4, on reclamation, I disagree with your interpretation.
> Specifically, you state, as I understand it, that the language you
> emphasized in bold requires reclamation upon removal of the
> equipment after a well permanently ceases to operate. That language,
> however, relates only to the removal of debris, equipment and personal
> property and is in no way related to the duty to repair and restore the
> surface. Therefore, I again request that the language be revised to
> require reclamation promptly after the removal of equipment etc. after a
> well permanently ceases to produce.
> Steve…
>
> From: McGranor, Timothy B. [mailto:tbmcgranor@vorys.com]
> Sent: Monday, January 14, 2013 6:09 PM
> To: Stephen P. Leiby
> Subject: RE: Fritz Dairy Farms settlement
> Steve:
> I fail to see what you are saying. The second sentence, which begins
> "Such work shall be . . ." states that after "all" cessation of operations
> on the leased premises, the Lessee with repair and restore the surface to
> the state it was prior to commencement of operations. That is to happen
> within reasonable amount of time after the Lessee's operations on the
> property. Even before that time, the third sentence, which begins,
> "Lessee shall remove all . . ." provides that Lessee is going to remove
> from the premises everything that isn't needed to operate the well while

---

[1] The email chain is reordered chronologically.

6

it is producing. That equipment will be removed after cessation. But the third sentence doesn't limit the second sentence; it should give your clients greater comfort. So I fail to understand what your clients' concern is with the language as drafted. If you still disagree, please provide specific language to address your concern, as I'm not going to guess at what you mean. Also, I want to direct your attention to R.C. 1509.072 (Duty to restore disturbed land surface), which specifically governs the lessee's duties to restore the land after operations. If your clients have some specific language they would like to see, please provide it. Note that this discussion does not change the fact that I expect a response no later than 1:30 p.m. tomorrow before I alert the Court on where we stand on the settlement. I look forward to hearing from you.

-Tim

From: Stephen P. Leiby [mailto:sleiby@neolaw.biz]
Sent: Monday, January 14, 2013 6:27 PM
To: McGranor, Timothy B.
Subject: RE: Fritz Dairy Farms settlement….

Tim,

Thank you for your reply and explanation. I appreciate the fact that R.C. § 1509.072 imposes reclamation duties upon the lessee. Nonetheless, I prefer that the pertinent language read as follows (with the additional language highlighted in bold):

RECLAMATION: To the extent Lessee's drilling operations actually disturb the surface of the leased premises, it is agreed and understood that the Lessee shall repair and restore the surface of the leased premises as nearly as practicable to the condition in which it existed at the time Lessee commenced drilling operations upon the leased premises. Such work shall be completed within a reasonable amount of time after all cessation of drilling, completion, equipping and other related operations upon the leased premises **and otherwise within six months after the last producing well permanently ceases to produce** at the sole expense of the Lessee. Lessee shall remove all debris, equipment, and personal property which Lessee placed on the leased premises (except for equipment needed for the operation of producing

7

wells, which shall be removed within six (6) months after the last producing well permanently ceases to produce). Thank you for your consideration.  Steve…Doc.  20-2, PageID # 180-181.

The email exchange shows ongoing disagreement between the attorneys and their clients over water usage and land reclamation.  Specifically, the Fritzes wanted to keep the original lease language barring "use [of] any water from Lessor's wells, ponds, springs, lakes, reservoirs or creeks located on the lease premises without Lessor's written consent."   Doc. 27, PageID# 375.  The email exchange shows no meeting of the minds on these issues.   It also shows that Attorney Leiby and Attorney MacGranor understood the Fritzes approval of these changes was needed to resolve the case.

**Settlement Agreement not finalized**

Mineral extraction leases are complicated documents with thousands of words.  Judge Adams gave the parties 30 days to draft the necessary documents.  Besides the objection to the confidentiality term, the parties were negotiating water usage and land reclamation.  Unlike cases cited by Appellees where a party was attempting to rescind a settlement agreement; in this case, complicated documents needed to be drafted and approved.  See

8

*Lepole v.Long John Silver's*, 2003-Ohio-7198 (Ohio Cr. App. Dec. 31 2003)

or *Mollis v. Rox Constr. Co.*, 1992 Ohio App. LEXIS 6083 (Ohio Ct. App.

Dec. 4, 1992).  The settlement agreement was never finalized.

      In *Lepole* the party objecting to the settlement agreement failed to argue

lack of apparent authority; rather she attempted to rescind an admittedly

finalized settlement agreement.  Another case cited by Appellees is *Rubel v*

*Lowe's Home Ctrs*.  2008 U.S. Dist. LEXIS 38158 (N.D. Ohio Mar. 6, 2008),

citing *Argo Plastic Prods. Co. v. City of Cleveland,* 474 N.E. 2d 328 (Ohio

1984).  However, *Argo* was an appeal of a denial of a 60(B) motion so it is not

applicable to the case at bar.  "Neglect or error on the part of a party's attorney

is imputed to that party **for the purposes of Civ.R. 60(B)(1)."** *GTE*

*Automatic Electric Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146*,* 153.

(Emphasis added.)  "In *Argo Plastic Prods.,* the Supreme Court was at pains

to note, repeatedly, that the issue under review arose in the context of a

motion for relief from judgment. The judgment on the settlement in that case

had already become final, so the extraordinary circumstances set forth in

Civ.R. 60(B) were required to relieve the aggrieved litigant from its effects.

The Supreme Court employed the familiar principle that bad lawyering is not

9

a justification for relief, under Civ.R. 60(B), from a judgment that has become final." *Adkins v. Estate of Place*, 180 Ohio App. 3d 747.


**Confidentiality term**

Appellees mischaracterize the confidentiality term as limited to the amount of money paid to Appellants. However, the record shows the confidentiality term was broader, requiring the record of the settlement conference to be sealed. In fact, the District Court's March 1, 2013 order belies this contention. Judge Adams wrote, "[t]his order is placed under seal due to the parties' agreement regarding the confidentiality of the terms of their settlement." Doc. 26, PageID# 236. The Judge uses the plural, "terms", to describe what is covered by the confidentiality clause.

The cases cited by Appellees concerned finalized agreements. In *Mr. Mark Corp.* the dispute concerned a signed (standard) Purchase Agreement-not an oral agreement to settle. *Mr. Mark Corp. v. Rush, Inc*. 464 N.E.2d 586 (Ohio Ct. App. Feb 24, 2011). In that case, the Court found the agreement was a fully integrated document that precluded oral testimony about the parties' intentions. *Id*. In another, *Sheng v. Starkey Labs*, the parties settled

the case believing a motion for summary judgment was still pending, when in fact, it had been granted.  117 F.3d 1081.  One of the parties attempted, through a 60(B) motion, to allege mistake.

**Buyer's Remorse?**

Appellees seek to discredit the Fritzes as having "buyer's remorse." Appellees cite to Domestic Relations cases.  The standards in those cases are unique and not applicable here.  Ambiguous marital separation agreements led to rules of interpretation not applicable to contracts.  "It is well-established that a trial court has broad discretion to interpret ambiguous or vague provisions contained in a separation agreement incorporated into a divorce decree."  *Kistler v Kistler*, 11th Dist., No. 2003-T-0060, 2004-Ohio-2309; *Yeager v. Yeager*, 11th Dist., 2002-G-2453, 2004-Ohio-1959; *Svette v. Svette*, 11th Dist. NO. 98-G-2168, 1999 Ohio App. LEXIS 3981.  These rules may make sense in domestic relations cases, where parties are often unrepresented and the legal definitions of terms may not be understood.  That same reasoning does not apply in complex civil litigation.

11

Appellees do not address the fact that there was no contract formation due to an ambiguous and disputed lease term.  To have remorse there must have been contraction formation.  Appellees admit the change in the length of the lease term is essential.  Appellees Brief, p. 6.  The record shows the change from a five year primary term, with a right of renewal for an additional five years to a "total" of 7 ½ years is capable of several interpretations. The existence of a contract is a question of law. *Telxon Corp. v. Smart Media of Delaware, Inc.*, Summit App. Nos. 22098 and 22099, 2005-Ohio-4931, 2005 WL 2292800, at ¶ 40; see also *Hocking Valley Community Hosp. v. Community Health Plan of Ohio*, Hocking App. No. 02CA28, 2003-Ohio-4243, 2003 WL 21904586, at ¶ 11. "[T]o declare the existence of a contract, both parties to the contract must consent to its terms; there must be a meeting of the minds of both parties; and the contract must be definite and certain." *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations* (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134.  A contract does not exist unless the parties have a meeting of the minds as to the essential terms of the contract. Id.; see also *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, at ¶ 16.

12

The Fritzes did not agree on terms including confidentiality, the length of the lease, the acreage covered by the lease, water usage, and land reclamation.  Appellees' claim of buyer's remorse is subterfuge---irrelevant to this case.

## <u>CONCLUSION</u>

The District Court in this case did not possess jurisdiction over this case, which nullifies the court's decision to enforce any purported settlement agreement.  The court abused its discretion when it held that there was a valid and enforceable settlement agreement between the parties when essential terms were never discussed, nor agreed upon by the Fritzes.  The attorney's apparent authority cannot bind the Fritzes to terms they did not discuss and objected to.

On the grounds discussed in Appellants' Brief and Reply Brief, the Fritzes respectfully ask this Court to REVERSE and REMAND this case and find the District Court does not have jurisdiction due to a lack of complete diversity.

Respectfully submitted,

/s/Warner Mendenhall
WARNER MENDENHALL, 0070165
ALYSSA ALLEN, 0082715
THE LAW OFFICES OF WARNER
MENDENHALL, INC.
190 North Union Street, Suite 201
Akron, OH  44304
(330) 535-9160; fax (330) 762-9743
warnermendenhall@gmail.com


ATTORNEYS FOR APPELLANTS

14

## **CERTIFICATE OF COMPLIANCE WITH FRAP 32(A)(7)**

      I hereby certify that the foregoing Proof Brief of Appellant complies with the type volume limitations of FRAP 32(A)(7), as it contains 2651 words.

                  /s/Warner Mendenhall

                  Warner Mendenhall, 0070165

15

## **CERTIFICATE OF SERVICE**

I hereby certify the foregoing Brief of Appellant was served via the Court's ECF, on this 21st day of January, 2014.

/s/Warner Mendenhall
Warner Mendenhall, 0070165

**<u>Designation of Relevant District Court Documents</u>**
Doc. 37, Transcript of Pretrial, PageID# 509, 511
Doc. 38, Transcript of Motion Hearing, Page ID# 554, 557
Doc.  20-1, Motion to Enforce, Ex. 1, PageID# 161, 163
Doc.  20-2, Motion to Enforce, Ex. 2, PageID# 180-181
Doc. #27, Fritz Letter to Court, PageID# 375
Doc. 26, Order on Motion to Enforce, PageID# 236